Richard M. Garbarini
Garbarini FitzGerald P.C.
250 Park Avenue, 7th Floor
New York, New York 10177
Telephone: 212.300.5358
Facsimile: 888.265.7054
rgarbarini@garbarinilaw.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
VICTOR ALEXANDER KING,

                            Plaintiff,           Index No: 16-cv-2453

              v.                           **COMPLAINT AND DEMAND FOR JURY TRIAL**

WHOLE FOODS MARKET GROUP, INC.,     ECF CASE

                           Defendant.
----------------------------------------------------------------x

       Plaintiff VICTOR ALEXANDER KING, by and through his attorneys at Garbarini FitzGerald P.C., alleges on personal knowledge as to himself, and upon information and belief as follows:

### PARTIES

1.     Plaintiff Victor Alexander King is an individual and a resident of the Bronx, New York. At all times relevant, Plaintiff was an employee of Defendant Whole Foods Market Group, Inc., within the meaning of the New York State and New York City Human Rights Laws.

2.     Upon information and belief, Defendant Whole Foods Market Group, Inc. ("WHOLE FOODS") is a Texas corporation with a principal place of business in Texas. At all relevant times, WHOLE FOODS employed Plaintiff within the meaning of the New York State and New York City Human Rights Laws.

3.	At all times relevant, WHOLE FOODS was, and is, a super market that specializes in natural an organic foods with more than 340 stores throughout the United States, the United Kingdom and Canada.  Upon information and belier, Defendant WHOLE FOODS has more than 400 employees in this Judicial District.

## JURISDICTION AND VENUE

4.	This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction).  Plaintiff and Defendant are completely diverse and this matter involves more than $75,000.

5.	Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1) (district where plaintiff resides) and (b)(2) (district in which a substantial part of the events or omissions giving rise to the claims occurred).

## FACTS

6.	This lawsuit arises primarily out of Defendant's failure to address and remedy the discrimination and hostile work environment created by the repeated harassment and intimidation that Plaintiff was subjected to by his co-workers and supervisors at WHOLE FOODS over a period of six months.

7.	Plaintiff Victor Alexander King ("KING") is a transgender male who began working at the WHOLE FOODS located on 250 7th Ave, New York, NY (the "Chelsea Store"), on August 29, 2016, and his position was terminated on or about March 3, 2016.

8.	Plaintiff started work at Defendant as a male, officially changed his name to Victor prior to his employment, and expected to be treated as a male.  Plaintiff started hormone therapy five months prior to starting work, which altered the distribution of the secondary sex characteristics.

9. Plaintiff spoke to the Team Leaders ("TLs"), and Assistant Team leaders/Customer Service Supervisors ("ATLs/CSSs") before he started working at the Chelsea location, informing them of his situation. Plaintiff was assured the supermarket was LGBT friendly, and the Chelsea location had individuals who understood Plaintiff's situation.

10. "Tanisha" in Human Resources, however, refused to accept Plaintiff's name change until the Social Security Administration changed it. Tanisha refused to accept the Court Order directing Plaintiff's name be changed to Victor Alexander.

11. Defendant would not have made a similarly situated hetero-norm individual jump through additional hoops.

12. After 3 days of training on 96th Street from August 29th – 31st, Plaintiff began working at the Chelsea location.

13. Shortly after Plaintiff started working at the Chelsea location, the systematic harassment started.

14. Both co-workers and supervisors, multiple times a day, every day, would refer to Plaintiff as "she", "her", or "it".

15. Every day Plaintiff was forced to repeatedly ask his co-workers and supervisory personnel to stop referring to him as she, her, or it.

16. For example, co-worker, Pria Darsha Minickchen, told a customer "give it to he/she/it/ whatever it is."

17. Supervisor Michael Ford walked by Plaintiff and sung "you're not who you use to be", which received great laughter from Plaintiff's co-workers standing nearby.

18. Quadry Scott, Customer Service Supervisor, told Plaintiff, "I know you are not a guy, I am not going to refer to you as a guy."

19. The daily reference to Plaintiff by co-worker and supervisor alike in the feminine pronoun was dehumanizing

20. Plaintiff refused to go to Jeff Grant, the Team Leader in the front of the house, because Grant was one of the individuals who laughed when Quadry made the offensive statement.

21. Grant also snickered at various times when others made discriminatory comments directed toward Plaintiff.

### PLAINTIFF COMPLAINS TO MANAGEMENT

22. In December 2015, Plaintiff informed the Regional Manager, "Victoria" of the daily discriminatory and demeaning comments. The Regional Manager directed Plaintiff to go to the other store Team Leader - Gina Kim.

23. Plaintiff went to Gina Kim, and informed her of the daily humiliation, but Ms. Kim took no action, started no investigation, and the harassment continued unabated.

24. Plaintiff continued to go to Ms. Kim, pulling her aside for help; but nothing was done.

25. Margy Fiori, an individual who works for an LGBT program that helped Victor get the job, also attempted to help. Ms. Fioro spoke to "Scott", another Regional Manager, which resulted in the CSSs/ATLs in the market purportedly going to "sensitivity training".

26. Sometime in February 2016, on one of the occasions Plaintiff sought help from Ms. Kim, Plaintiff was told the ATLs/CSSs, attended "sensitivity training."

27. Plaintiff repeatedly requested a formal complaint be drafted, but Ms. Kim refused to put anything memorizing any complaint in writing.

28. No action was taken to address the staff, no investigation or disciplinary action.

29. The staff continued its daily onslaught of dehumanizing comments.

30. The supervisors retaliated against Plaintiff for complaining.

31. The Supervisors, including Team Leader Jeff Grant, refused to speak with Plaintiff after the training.

32. Each day Plaintiff started work; he would go to the booth and ask what register to take and would be ignored.

33. Plaintiff was forced to just pick an empty register and start working. At times being told later he was working at the wrong register.

### THE DISCRIIMNATION CONTINUES

34. Plaintiff came home most often crying from being dehumanized.

35. The discrimination continued, and each day Plaintiff politely correcting his co-workers advising them to use he or him and not she or it.

36. Other comments were made after the purported 'sensitivity training", e.g., co-worker Pria asked Plaintiff "does your girlfriend fall asleep on you".

37. Co-worker McKensie said "you're a Chihuahua, I'm a Pitbull, you're just something for the girls to pet."

38. Day after day, the abuse accumulated until Plaintiff could no longer take it. In early March 2016, Plaintiff went to the bathroom and broke down.

### PLAINTIFF'S FINAL ATTEMPT TO COMPLAIN OF THE HARRASEMENT

39. In March 2016, Plaintiff again went to Team Leader Gina Smith and begged for help. Smith told Plaintiff "I can't just take your word for everything."

40. Plaintiff asked for a written record of his complaints, something that recorded what was going on. Smith refused, telling Plaintiff she has her own way of doing things.

41. At this point, Plaintiff knew speaking to Management was futile.

42. Smith raised the issue of moving Plaintiff to another store, but Plaintiff was broken at this point, and knew a move would also be futile.  After all, if the Whole Foods in Chelsea was this hostile, why would any other be more inviting?  It is also a terrible solution to punish the only innocent person in order to avoid addressing the offending staff and managers.

43. In his final email, Plaintiff explained why "no one should have to endure what I have gone through."

44. Defendant, through its supervisors and managers, systematically discriminated against Plaintiff, creating a toxic environment that was so hostile Plaintiff was forced to quit.

## FIRST CAUSE OF ACTION
### N.Y.C. Admin. Code § 8–130 (enacted pursuant to N.Y.C. Local Law No. 85, § 7 (2005) (DISCRIMINATION BASED ON SEXUALORIENTATION)

45. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

46. There was an employer-employee relationship between Plaintiff and Defendant.

47. The NYCHRL imposes strict liability on employers for discriminatory acts of managerial employees under N.Y.C. Admin. Code § 8–107(13)(b)(1) ("an employer is liable for the acts of its employees: (1) where the offending employee exercised managerial or supervisory responsibility").

48. The NYCHRL requires employers and covered entities to use an individual's preferred name, pronoun and title (e.g., Mr.) regardless of the individual's sex assigned at birth, anatomy, gender, medical history, appearance, or the sex indicated on the individual's identification.

49. Defendant's intentional or repeated refusal to use Plaintiff's preferred name, pronoun, or title were acts of discrimination.

50. Each comment made by the staff and co-workers were additional acts of discrimination.

51. Plaintiff has been treated less well than other employees because he is a member of a protected class.

52. Plaintiff was made to submit additional paperwork proving his name change, even though he had a Court Order. That was an act of discrimination.

53. Plaintiff is entitled to back and front pay, along with other compensatory and punitive damages, attorneys' fees and costs, to be determined a trial.

**SECOND CAUSE OF ACTION**
**(Executive Law § 290 et seq./NYSHRL)**
**(9 New York Code of Rules and Regulations §466.13)**
**(DISCRIMNATION AND HOSTILE WORK ENVIRONMENT)**

54. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

55. There was an employer-employee relationship between Plaintiff and Defendant.

56. Harassment on the basis of a person's gender identity or the status of being transgender is sexual harassment.

57. Defendant's conduct created discrimination based on Plaintiff's sex and created hostile work environment based on his sex. Title 8, § 8–101 et seq.

58. Defendant's conduct created discrimination based upon Plaintiff's sex and created a hostile work environment based on Plaintiff's sex.

59. Plaintiff's protected class is that of his sex, and his employer, over a protracted period of time, discriminated against him and created an ugly and hostile work environment, culminating in her illegal termination.

60. The state regulations provide that: Discrimination on the basis of gender identity is sex discrimination, and the protections in the NYSHRL against gender discrimination also prohibit discrimination on the basis of gender identity or transgender status.

61. Plaintiff is entitled to all back-pay, front-pay, compensatory damages, punitive damages, attorneys' fees and costs of the action to be determined at the trial of this action.

**THIRD CAUSE OF ACTION**
**Administrative Code of the City of New York, § 8–102 [23], 8–107[14][a])**
**Violation of Local Law No. 3 (2002); N.Y.C. Admin. Code § 8-102(23)**
**HOSTILE WORK ENVIRONMENT**

62. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

63. N.Y.C. Admin. Code § 8-107(1)(a). It is unlawful to create a hostile work environment based on discrimination because of sexual orientation.

64. The NYCHRL prohibits discriminatory harassment or violence motivated by Plaintiff's actual or perceived gender identity or expression that attempts to interfere with, or actually interferes with, Plaintiff's employment.

65. The New York City Human Rights Law (NYCHRL) bars retaliation against employees for asserting their rights under the statute.

66. The NYCHRL provides that it "shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title have been so construed." N.Y.C. Admin. Code

§ 8-130.

67. Discriminatory harassment or violence motivated by a person's actual or perceived gender identity or expression violates the NYCHRL.

68. The NYCHRL prohibits an employer from retaliating against an individual for opposing discrimination. Any action taken against an individual because of such a request that is "reasonably likely to deter them from engaging in such activities" is unlawful retaliation.

69. Plaintiff is entitled to reinstatement, promotion, back pay, front pay, compensatory damages, punitive damages, attorney's fees, and costs, to be determined at the trial of this action.

## FOURTH CAUSE OF ACTION
### (NYCHRL Retaliation)
### Section 8–107(7) of the Administrative Code

70. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

71. It unlawful to retaliate against a person who complains about illegal discrimination or a hostile work environment.

72. It was an unlawful discriminatory practice for Defendant to retaliate or discriminate in any manner against Plaintiff because he (i) opposed any practice forbidden under this chapter, or (ii) filed a complaint, testified or assisted in any proceeding under this chapter. See 8–115 of this chapter. N.Y.C. Admin. Code § 8–107(7) (emphasis added).

73. Retaliation claims under the NYCHRL cover a broader range of conduct " than discrimination claims.

74. Plaintiff was engaged in a protected activity.

75. Defendant was aware that he participated in such activity.

76. Plaintiff suffered an action that would be reasonably likely to deter him from engaging in the protected activity.

77. There is a causal connection between the protected activity and the adverse action.

78. By refusing to engage Plaintiff each morning, turning their backs, or walking away from Plaintiff when he asked what register he should got work at, Defendant committed acts of retaliation.

79. The actions of the ATLs/CSSs and Team Leader where contemporaneous with the complaints, and the "sensitivity training".

80. Plaintiff is entitled to all back-pay, front-pay, compensatory damages, punitive damages, attorneys' fees and costs of the action to be determined at the trial of this action.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for the following relief:

A. All back pay and front pay;

B. Compensatory damages;

C. Punitive damages under New York City Administrative Code § 8–502(a):

D. Pre-judgment interest;

E. Attorneys' fees and costs of the action; and,

F. Such other relief as this Court shall deem just and proper

### DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Amended Complaint.

Dated: April 2, 2016            **GARBARINI FITZGERALD P.C.**
       New York, New York

                                                  By: _____
                                                      Richard M. Garbarini (RG 5496)
                                                      250 Park Avenue
                                                      7th Floor
                                                      New York, New York 10177
                                                      Telephone: 212.300.5358
                                                      Facsimile: 888.265.7054
                                                      rgarbarini@garbarinilaw.com

                                                      *Attorneys for Plaintiff*